Original
No. 83-115
Hillsborough
No. 83-212

### THE STATE OF NEW HAMPSHIRE

v.

### JOHN P. FLYNN, JR.

July 7, 1983

458

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and orally), for the State.

*Vincent J. Nardi,* of Manchester, and *Lawrence F. O'Donnell,* of Boston, Massachusetts (*Mr. Nardi* and *Mr. O'Donnell* on the briefs, and *Mr. O'Donnell* orally), for the defendant.

CANN, J. (By special assignment pursuant to RSA 490:3.) The State brought a petition for a writ of prohibition to vacate a ruling of the Superior Court (*Pappagianis,* J.) which suppressed certain financial records because they were obtained in contravention of the New Hampshire Right to Privacy Act, RSA chapter 359-C (Supp. 1981). The State also challenged the defendant's standing to assert the rights of third parties, in his motion to suppress the evidence obtained from the third parties' financial accounts relying on alleged violations of RSA chapter 359-C (Supp. 1981). This question is before us upon an interlocutory transfer without ruling. For the reasons set forth, we dismiss the petition and, with regard to the interlocutory transfer, remand for findings consistent with this opinion.

In April 1981, the Hillsborough County Grand Jury petitioned the superior court to issue a subpoena duces tecum for certain financial records maintained in the name of the defendant and/or his wife, Joan Flynn, at several Manchester area banks. The grand jury requested these records in connection with its investigation of John P. Flynn, an attorney, who was suspected of theft crimes related to the "Stewart-Meyers" case and to alleged improper activities of certain of the defendant's clients. The petition stated that the grand jury had "found probable cause that the records set forth below contain evidence of possible criminal offenses" involving Flynn and others unnamed. On June 8, 1981, the Superior Court (*Flynn,* J.) issued the requested subpoena, and the State acquired the specified documents.

In June 1982, the grand jury again petitioned the superior court to issue a subpoena duces tecum for additional financial records in connection with its investigation of John Flynn. This petition requested "[a]ny and all records including but not limited to: deposit records, cancelled checks, bank statements . . . relating to a joint savings account of Mildred M. Flynn [the defendant's mother] and Blanche M. Waddick [the defendant's grandmother]." The Superior Court (*Pappagianis*, J.) issued the subpoena on June 15, 1982. The requested financial records were obtained, and the grand jury thereafter returned thirteen indictments against the defendant on various theft offenses.

Although each of the two petitions was approved by a different superior court judge, neither judge made an independent finding of probable cause before issuing the subpoena. Prior to trial, the defendant filed a motion to suppress the evidence obtained from the banks pursuant to these subpoenas. He contended that the evidence and information received by the grand jury pursuant to the subpoenas were not described with the requisite particularity, and that the subpoenas were not supported by a judicial finding of probable cause, as required by RSA 359-C:10, II (Supp. 1981). He also contended, *inter alia*, that the failure to provide him with notice, as required by RSA 359-C:10, III (Supp. 1981), in itself necessitated suppression of the evidence obtained from the banks.

After a hearing on the motion to suppress, the trial judge, who incidentally had approved one of the two challenged grand jury subpoenas, ruled that the subpoenas were invalid because RSA 359-C:10, II (Supp. 1981) requires the superior court judge who signs and authorizes the issuance of the subpoena to make the finding of probable cause. The judge further held that suppression of the evidence obtained pursuant to the invalid subpoenas was the appropriate remedy for violations of RSA 359-C:10, II (Supp. 1981). The State challenges the court's rulings by means of a petition for writ of prohibition because the State's request for leave to bring an interlocutory appeal of these rulings was denied by the trial court. The trial court, however, did permit an interlocutory transfer of issues regarding the defendant's standing to challenge the admissibility of evidence obtained from the accounts of the defendant's wife, mother and grandmother.

## I. *Petition for Writ of Prohibition*

We first resolve the State's petition for a writ of prohibition in regard to the trial court's ruling suppressing bank records of the defendant obtained by the State by means of the subpoena issued in June 1981.

■■■■ "A writ of prohibition is an extraordinary writ issued to prevent the exercise of jurisdiction not granted, and is to be used with caution and forbearance." *Wyman v. Durkin*, 114 N.H. 781, 783, 330 A.2d 772, 773 (1974). Our criterion in reviewing a petition for writ of prohibition is that we will not exercise this extraordinary action, unless there is a clear case of necessity. *Hillsborough v. Superior Court*, 109 N.H. 333, 334, 251 A.2d 325, 326 (1969). When there is no other remedy, this court may exercise its supervisory powers and countermand, by means of a writ of prohibition, a trial court's order which is not supported by any legal authority. *State ex rel. Regan v. Superior Court*, 102 N.H. 224, 226–27, 153 A.2d 403, 404–05 (1959). Accordingly, we must determine whether the trial court in this case was without *any* legal authority to support its order to suppress the various financial records.

The State's argument that a *judicial* finding of probable cause is not required by the statute is twofold: first, that the plain reading of RSA 359-C:10, II (Supp. 1981) is that the grand jury, not the judge, makes the finding of probable cause upon which the issuance of a subpoena is conditioned; and second, that, even if the statute's language is ambiguous, the trial court erred in interpreting it to require that a judge make the finding of probable cause prior to the issuance of a subpoena. Alternatively, the State argues that even if the statute requires a superior court judge to make a finding of probable cause prior to issuing a subpoena, suppression of evidence obtained pursuant to a subpoena issued without such a finding is not the appropriate remedy.

■■■■ "It is well established that the words in the statute itself are the touchstone of the legislature's intention." *Greenhalge v. Town of Dunbarton*, 122 N.H. 1038, 1040, 453 A.2d 1295, 1296 (1982) (citations omitted). When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by judicial construction. *Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979). Although the legislature is not compelled to follow technical rules of grammar and composition, a widely accepted method of statutory construction is to read and examine the text of the statute and draw inferences concerning its meaning from its composition and structure. 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 47.01, at 70 (Sands ed. 1973). "This court ascribes to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise." *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980); *see* RSA 21:2.

■■ RSA 359-C:10, II (Supp. 1981) states that "[a] grand jury, upon resolution adopted by a majority of its members, may obtain

financial or credit records pursuant to a judicial subpoena or subpoena duces tecum which, *upon a showing of probable cause,* is personally signed and issued by a judge of the superior court." (Emphasis added.) The statute clearly requires a finding of probable cause prior to issuance of a subpoena.

 The term "judicial" is key to understanding the intent of the above passage. The adjective "judicial" means "ordered or enforced by a court . . . [or] belonging to or appropriate to a judge or the judiciary. . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1223 (1961). It describes an act involving the exercise of judgment or discretion, as distinguished from a mere *ministerial* act. BLACK'S LAW DICTIONARY 759 (rev. 5th ed. 1979). Therefore, a judicial subpoena issued under the statute is one ordered or enforced by the court upon a showing of probable cause.

 Thus, a reasonable reading of RSA 359-C:10, II (Supp. 1981) is that a grand jury, if a majority so votes, may request a judicial subpoena or a judicial subpoena duces tecum in order to obtain financial records governed by RSA chapter 359-C and that a judge issues and signs such a subpoena if there is a showing of probable cause. Therefore, we hold that the trial court in this case did not act without legal authority when it ruled that a judge must determine whether there is probable cause prior to issuing a subpoena for bank records pursuant to this statute.

The State argues that suppression is not an appropriate remedy for violations of the statute because RSA chapter 359-C does not specifically provide for suppression of evidence as a remedy for such a violation. The State supports its argument that suppression is an inappropriate remedy by pointing to the sections of the statute which provide criminal penalties for anyone who knowingly violates its provisions and provides for injunctive relief, contending that these remedies are exclusive. *See* RSA 359-C:12 through :14 (Supp. 1981).

 The State's argument is not convincing. Merely because the legislature wanted to penalize willful violators of the privacy act does not mean that it intended to eliminate the judicial and equitable remedy of suppression of wrongfully acquired evidence in a criminal proceeding. Contrary to the State's argument, RSA 359-C:14 (Supp. 1981) provides in part:

"In addition to any other remedy contained in this chapter *or otherwise available,* injunctive relief shall be available to any customer aggrieved by a violation, or threatened violation, of this chapter *in the same manner as such*

*injunctive relief would be available if the financial or credit records concerning the customer accounts were in his possession.*"

(Emphasis added.) This provision clearly articulates that the legislature did not intend to limit the remedies available to a bank customer such as the defendant, aggrieved by a violation of RSA chapter 359-C (Supp. 1981), to those specified in the statute.

 In a broad sense, the power of the court to suppress illegally obtained evidence is injunctive relief. "An injunction is the form of equitable proceeding which protects civil rights from irreparable injury . . . [where there exists] no adequate remedy at law." *Ladner v. Siegel,* 298 Pa. 487, 495, 148 A. 699, 701 (1930); *accord Meridian, Ltd. v. San Francisco,* 13 Cal. 2d 424, 447, 90 P.2d 537, 548 (1939).

 Arguably, however, the statute is ambiguous as to whether suppression of the evidence obtained in violation of the law is an appropriate remedy. When construing an ambiguous statute, this court looks to both the legislative intent and the objectives of the legislation. *Greenhalge v. Town of Dunbarton,* 122 N.H. at 1040, 453 A.2d at 1296.

The declaration of purpose set forth in the New Hampshire Right to Privacy Act, RSA chapter 359-C (Supp. 1981), states that "[t]he purpose of this chapter is to protect the confidential relationship between financial institutions, creditors and credit reporting agencies and their respective customers and *the constitutional rights of citizens inherent to that relationship.*" RSA 359-C:2, II (Supp. 1981) (emphasis added). The following statement accompanied RSA chapter 359-C when it was introduced as HB 1141 in the 1977 legislature:

> "This bill establishes the right of a person to expect that his financial, credit and communications records shall remain confidential except in certain cases involving a reasonable suspicion that the person has committed a crime or in cases in which a proper administrative or judicial summons or subpoena is obtained. All state and local agencies are restricted from obtaining the information in the records of a person . . . . It is designed to prevent 'fishing expeditions' by government agencies into the financial, communications and credit records of individuals. It further guarantees due process to persons whom the government seeks to investigate. . . ."

N.H.H.R. JOUR. 520 (1977). Subsequently, on the floor of the Senate, Senator Bradley stated: "Basically what this bill does is to set up the criteria under which people outside agencies can get access to your own private records in things like a bank or financial institutions in general. It sets up protections to insure that your private information about your finances isn't loosely disclosed." N.H.S. JOUR. 2327 (1977).

 In view of these expressions of legislative intent and objectives which clearly indicate that the legislature wanted to provide for constitutional-type safeguards for certain financial records maintained by banks, we hold that suppression of the defendant's bank records obtained in violation of RSA chapter 359-C (Supp. 1981) is an appropriate remedy. *Cf. Burrows v. Superior Court,* 13 Cal. 3d 238, 529 P.2d 590 (1975) (bank statements without benefit of legal process required suppression of evidence on constitutional grounds). Accordingly, we hold that there was ample legal authority supporting the trial court's order suppressing the evidence obtained in violation of the defendant's right of privacy under RSA chapter 359-C (Supp. 1981), and we dismiss the State's petition for a writ of prohibition.

We note, however, that our holding today is based upon the provisions of RSA chapter 359-C (Supp. 1981) which were effective at the time the subpoenas in question were issued. The legislature has recently passed amendments to the right to privacy law which become effective August 9, 1983. *See generally* Laws 1983, ch. 174. Accordingly, these amendments do not affect the cases at hand.

## II. *Standing*

We next turn to the interlocutory transfer. The questions transferred are as follows:

> "Does a defendant have standing to suppress evidence obtained from a bank account under RSA 359-C where the account is listed in the names of third persons and where the defendant is not a customer of the bank with respect to that account?
>
> If the defendant lacks standing to move to suppress, do Joan Flynn, Blanche Waddick and/or Mildred Flynn have standing in a criminal case between the State of New Hampshire and [the defendant], to move to suppress evidence or to quash subpoenas for evidence . . . if the records obtained from their accounts are offered at or subpoenaed for trial and if those records were previously learned of or obtained in violation of RSA 359-C?"

■ The threshold question as to the determination of a party's standing to challenge the introduction of evidence by means of a motion to suppress is whether any rights of the moving party were violated. *See State v. Beaulieu,* 119 N.H. 400, 404, 402 A.2d 178, 181 (1979); *State v. Ruelke,* 116 N.H. 692, 693, 336 A.2d 497, 498 (1976). Consequently, in the case at hand, we must determine whether any of the defendant's rights pursuant to RSA chapter 359-C (Supp. 1981) were violated by the issuance of improper subpoenas for the bank records for the account maintained in the name of Joan Flynn, alone, and of the joint account maintained in the names of Mildred Flynn and Blanche Waddick.

■ The right of privacy in financial records afforded by RSA chapter 359-C (Supp. 1981) is limited to those individuals who meet the statutory definition of "customer." *See* RSA 359-C:2 (Supp. 1981). RSA 359-C:3, VI (Supp. 1981) defines "customer" as "any person who has transacted business with or has used the services of a financial institution, or credit reporting agency or for whom a financial institution has acted as a fiduciary."

■ We hold that the defendant John Flynn is not a customer with respect to the financial records maintained in the account of Joan Flynn and in the joint account in the names of Mildred Flynn and Blanche Waddick. *See* RSA 359-C:3, VI & VIII (Supp. 1981). The defendant did not transact business with the banks in question with respect to financial records maintained in connection with the accounts held by his wife, his mother and his grandmother. Rather, the defendant can be said to have transacted business with customers of the banks and not with the respective banks. Therefore, he does not have standing as a "customer" under RSA chapter 359-C (Supp. 1981) to challenge the admission of evidence obtained in violation of that statute's procedures protecting the privacy rights of customers.

■■ For the reasons set forth in the preceding discussion of the procedures mandated by RSA 359-C:10, II (Supp. 1981) for the subpoena of financial records, the statutory rights of privacy of Joan Flynn, Mildred Flynn and Blanche Waddick may have been contravened. However, their remedies would be limited to those provided by RSA 359-C:12 through :14 (Supp. 1981), and the extraordinary remedy of the suppression of evidence in a proceeding against a third party may not be invoked by these customers because they are not the subject of any criminal prosecution. *See United States v. Calandra,* 414 U.S. 338, 348 (1974). Generally, "standing to invoke the exclusionary rule has been confined to situations where the

Government seeks to use such evidence to incriminate the victim of the unlawful search." *Id.*

 Nevertheless, the questions transferred to this court refer to records *"learned of"* as a result of a violation of RSA chapter 359-C (Supp. 1981). Because we have held that evidence obtained from the defendant's account or from the account held by him jointly with his wife should be suppressed because it was obtained by an invalid subpoena, we also hold that the doctrine of *Wong Sun v. United States*, 371 U.S. 471 (1963), applies to determine the extent of the evidence that should be excluded. "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Id.* at 485. Therefore, we hold that the defendant has standing to challenge any evidence obtained directly or indirectly from a violation of his privacy rights pursuant to RSA chapter 359-C (Supp. 1981). Insofar as information wrongfully obtained from the defendant's accounts may have led to the request for financial records in the accounts of Joan Flynn, Mildred Flynn and Blanche Waddick, then such evidence obtained from those accounts may be suppressed unless the State can show discovery occurred through an independent source or that such information would inevitably have been discovered. *State v. Holler*, 123 N.H. 195, 200, 459 A.2d 1143, 1146 (1983). Accordingly, we remand this issue to the trial court for findings and rulings consistent with this opinion.

*No. 83-115 writ of prohibition denied, petition dismissed; No. 83-212 remanded.*

CANN, J., sat by special assignment under RSA 490:3; BOIS, DOUGLAS, BROCK, JJ., did not sit; the others concurred.