George **KILGUS, Jr.**

v.

Michael J. **CUNNINGHAM, Warden.**

No. 84–792–L.

United States District Court, D. New Hampshire.

Feb. 11, 1985.

Jean-Claude Sakellarios, Manchester, N.H., for plaintiff.

Gregory H. Smith, Atty. Gen., Concord, N.H., for defendant.

## ORDER ON WRIT OF HABEAS CORPUS

LOUGHLIN, District Judge.

Plaintiff, George Kilgus moves this court pursuant to 28 U.S.C. § 2241(a), (c)(3), (5) and 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Plaintiff is presently incarcerated in the New Hampshire State Prison for witness tampering, a violation of RSA 641:5. Defendant Cunningham is the Warden of the New Hampshire State Pris-on. Plaintiff alleges his incarceration in accordance with the state court judgment is in violation of the constitution or laws or treaties of the United States.

The facts for this habeas petition are as follows. On July 7, 1973 a small aircraft operated by the plaintiff made a crash landing at Grenier Field in Manchester, New Hampshire. Apparently, plaintiff neglected to engage the landing mechanism and landed the plane without the landing wheels down. No one was injured. The only other person on board was a Miss Shirley Chartier (now Mrs. Shirley Kulik). After the plane crash, Mr. Tony Luis, a then employee of the plaintiff came to the airport to pick up the plaintiff. Having recently been married and wanting to avoid embarrassment plaintiff asked Mr. Luis to say that he was with him on the plane. Mr. Luis agreed and the incident was so reported to the airport authorities.

In December, 1981 Barbara Labonville reported that her husband was missing. His body was later found in Westford, Massachusetts in early January, 1982. Subsequently, New Hampshire and Massachusetts authorities initiated a homicide investigation. During the early course of their investigation, the authorities questioned plaintiff about his relationship with the Labonvilles. Specifically, he was asked if he had any knowledge as to the death of Paul Labonville.

During the course of this questioning, Detective Roland Lamy of the New Hampshire State Police asked plaintiff who was in the plane with him in 1973. Plaintiff responded Tony Luis. After the questioning, plaintiff telephoned Mr. Luis and informed Luis of his questioning by the authorities about the Labonville homicide. Plaintiff informed Luis that he might be questioned about the 1973 airplane crash. Plaintiff told Mr. Luis to stick with the original story.

When Luis was originally questioned by the New Hampshire authorities he claimed to have been on the plane in 1973. However, once he was informed that the authorities were conducting a murder investiga-

tion, Mr. Luis admitted he was not on the plane. Luis testified to these matters at plaintiff's trial concerning the death of Paul Labonville. The record reveals that Mr. Luis renunciated the fabricated story of the 1973 incident once informed of the murder investigation. Luis also testified that he had no knowledge of, or connection with Paul and Barbara Labonville.

After Mr. Luis renunciated the 1973 story, the New Hampshire authorities secured an indictment against the plaintiff, George Kilgus charging him with witness tampering, a violation of RSA 641:5. Plaintiff was tried, convicted and sentenced to not less than one and a half years and not more than three years hard labor at the New Hampshire State Prison. Plaintiff filed his appeal to the New Hampshire Supreme Court.

On appeal to the New Hampshire Supreme Court, the plaintiff claims to have raised the following issues:

a. Whether, for the purposes of RSA 641:5, Mr. Tony Luis is a "witness or informant" with respect to the investigation of the death of Paul Labonville?

b. Whether the statute under which this indictment was filed, RSA 641:5 is unconstitutional on its face for overbreadth and vagueness and for failure to provide sufficient standards to provide guidance to a person that his action may be violating the provisions of the statute?

c. Whether the construction of the statute by the state violates the constitutional rights of the defendant under the first, fifth and the fourteenth amendments of the Constitution of the United States of America and Part I, Article 15 of the Constitution of the State of New Hampshire?

d. Whether the statement made by the defendant to Mr. Tony Luis regarding the unrelated and unconnected plane crash falls within the purview of RSA 641:5 with respect to the investigation of the death of Paul Labonville?

e. Whether the trial court erred in denying the motions to dismiss filed prior to the trial?

f. Whether the trial court erred in denying the defendant's motion for directed verdict on December 9, 1982?

g. Whether the trial court erred in denying the defendant's motion to dismiss the indictment filed on December 9, 1982?

h. Whether the trial court erred in granting the state's motion in limine on September 28, 1983?

i. Whether the trial court erred in denying the requests for jury instructions filed by the defendant on September 28, 1983?

j. Whether the trial court erred in denying the defendant's motion for directed verdict on September 29, 1983?

k. Whether the trial court erred in denying the defendant's motion for a mistrial based upon the conduct of the prosecutor on September 29, 1983?

l. Whether by its conduct and the conduct of its agents, the state should have been barred from prosecuting this action by collateral estoppel?

m. Whether the conduct of the prosecution, its agents, servants and employees was improper and violated the constitutional rights of the defendant and denied him a fair trial?

n. Whether there was sufficient evidence to support the conviction of the defendant on the charge of "witness tampering"?

o. Whether the various rulings by the trial court on the objections of the defendant during the course of trial of September 28, 1983 were proper?

It is a well established principle of Federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in federal court. *Fox Film Corp. v. Muller*, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935); *Murdock v. Memphis*, 20 Wall. 590, 22 L.Ed. 429 (1875); *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977); reh'g denied, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). The New Hampshire Supreme Court will not con-

sider issues raised on appeal that were not presented in the lower court. *Daboul v. Town of Hampton,* 124 N.H. 307, 471 A.2d 1148 (1983); *State v. Laliberte,* 124 N.H. 621, 622, 474 A.2d 1025 (1984). Accordingly, the New Hampshire Supreme Court refused to consider plaintiff's estoppel claim because he failed to raise it in the court below. *State of New Hampshire v. Kilgus,* 484 A.2d 1208 at 1211 (1984).

28 U.S.C. § 2254 explicitly requires that an applicant for a writ of habeas corpus exhaust the state remedies before challenging his conviction in the federal court. The threshold a petitioner must cross to meet this requirement is: "He must have fairly presented to the state courts the substance of his federal habeas corpus claim. (citations omitted); *Dyer v. Ponte,* 749 F.2d 84, 86 (1st Cir.1984).

■■■ Federal courts review Writs of Habeas Corpus only if there are constitutional issues. *McMichaels v. Hancock,* 428 F.2d 1222, 1223 (1st Cir.1970). Federal District Courts must dismiss habeas petitions containing both unexhausted and exhausted claims. The total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief. *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982). A review of the record reveals that the plaintiff has exhausted his claims in state courts.

In his writ of habeas corpus, plaintiff makes the following constitutional attacks on RSA 641:5:

1. That RSA 641:5 on its face is void for vagueness.

2. That RSA 641:5 is overbreadth and violates the defendant's first amendment right of free speech.

3. That RSA 641:5 fails to give proper notice thus it violates the due process requirements of the 14th Amendment.

4. That RSA 641:5 violates the due process requirements of the Fifth Amendment.

RSA 641:5 in pertinent parts provides:

**641:5 Tampering with Witnesses and Informants.** A person is guilty of a class B felony if

I. Believing that an official proceeding, as defined in RSA 641:1, II, or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a person to

(a) testify or inform falsely; or

(b) withhold any testimony, information, document or thing; or

(c) elude legal process summoning him to provide evidence; or

(d) absent himself from any proceeding or investigation to which he has been summoned.

Plaintiff first asserts that RSA 641:5 is on its face vague and overbroad.

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.... Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that legislature establish minimal guidelines to govern law enforcement". Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep; [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

(Citations omitted); *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983).

When evaluating a facial challenge to state law, a federal court must of course consider any limiting construction that a state court has proffered. *Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); reh'g denied, 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982); *Kolender v. Lawson*, 461 U.S. 352, 355, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903 (1983). Plaintiff asserts that if the word "person" in RSA 641:5 is not limited by the specific references to the title witness and informants, then it is void for vagueness as it fails to give fair warning of the forbidden conduct. To the contrary, the New Hampshire Supreme Court held the meaning of the word,

"person" is clear and unambiguous. It refers generally to all people, without limitation as to their status as witnesses or informants. When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by judicial construction. *State v. Flynn*, 123 N.H. 457, 462, 464 A.2d 268, 271 (1983); RSA 21:2.

We hold that the State did not need to prove that Mr. Luis was a witness or informant in the homicide investigation in order to support the defendant's conviction under RSA 641:5, I(a). It is sufficient under the statute that the "person" was asked to testify or inform falsely when the defendant believed that an investigation was pending.

*State of New Hampshire v. Kilgus, supra* at 1211, 1212.

On its face the use of the word "person" in the description of the forbidden conduct in RSA 641:5 is sufficient to meet the void for vagueness standard "that men of common intelligence would not be forced to guess at the meaning of the criminal law" set forth in *Connally v. General Construction Company*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Accordingly, this court finds that the language of RSA 641:5 gives an individual actual notice of the prohibited conduct and does not permit a standardless sweep.

Therefore, the statute is constitutional and not void for vagueness.

Plaintiff next attacks the constitutionality of RSA 641:5, I(a) claiming it is unconstitutional under the Federal Constitution because it is overbroad. Plaintiff asserts that the statute interferes with his first amendment right of free speech. The United States Supreme Court defined the overbreadth doctrine in *NAACP v. Alabama*, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964) as follows:

"This court has repeatedly held that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Id. ... [T]he power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." Even though the governmental purpose be legitimate and substantial that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. (citations omitted). *NAACP v. Alabama, supra* at 308, 84 S.Ct. at 1314. Claims of facial overbreadth have been achieved in cases involving statutes, which by their terms seek to regulate "only spoken words". It has been the judgment of the United States Supreme Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). However, where conduct and not merely speech is involved the overbreadth statutes must not only be real but, substantial as well, judged in relation to the statute's plainly legitimate sweep. *Id.* at 615, 93 S.Ct. at 2917.

"When an individual's interest in expression is 'miniscule' compared to the public interest protected by statute prohibiting

the expression, then that expression or conduct is not immune under the First Amendment." *Colten v. Kentucky,* 407 U.S. 104, 111, 92 S.Ct. 1953, 1958, 32 L.Ed.2d 584 (1972). As the New Hampshire Supreme Court so aptly pointed out under the language of RSA 641:5 it was not necessary that Mr. Luis actually inform or testify so as to become an informant or a witness; it was only necessary that defendant believe that Mr. Luis was a potential witness. Witness tampering is a crime based on the attempt to induce false testimony and, therefore the statute focuses on the defendant's intent, rather than the actions of the person tampered with, or the outcome of the pending investigation. *State of New Hampshire v. Kilgus, supra* at 1211. RSA 641:5 protects the public interest in discovering the truth in official proceedings and investigations. When the state's interest is balanced against the plaintiff's right to speak to a potential witness with the intent of tampering with that witness, the plaintiff's right is "miniscule". *Id.;* citing *Colten v. Kentucky,* 407 U.S. 104, 111, 92 S.Ct. 1953, 1958, 32 L.Ed.2d 584 (1972).

■ After reviewing the record and arguments proffered this court is neither convinced that RSA 641:5 is either impermissibly vague or overbroad. This court also finds plaintiff's claim regarding the jury instructions, fair trial and substantial evidence to support his convictions to be without merit. There are no due process violations in the plaintiff's previous state court trials.

In denying petitioner's Writ of Habeas Corpus, the court is somewhat perturbed that the State of New Hampshire used a 1973 collateral, unrelated incident for a basis of conviction in this case.

Writ of Habeas Corpus denied.