Hillsborough-southern judicial district
No. 2009-678

THE STATE OF NEW HAMPSHIRE

v.

HORACE W. SEYMOUR, III

Argued: January 20, 2011
Opinion Issued: February 23, 2011

*Michael A. Delaney*, attorney general (*Jacqueline J. Rompre*, assistant attorney general, on the brief and orally), for the State.

*Cohen & Winters, PLLC*, of Concord (*Andrew S. Winters* on the brief and orally), and *EF Nappen Attorney at Law PC*, of Concord (*Evan F. Nappen* on the brief), for the defendant.

DALIANIS, C.J. Following a jury trial, the defendant, Horace W. Seymour, III, was convicted of two counts of theft by unauthorized taking. *See* RSA 637:3 (2007). On appeal, he argues that the Superior Court (*Groff*, J.) erred by denying his motion to suppress his financial records, *see* RSA 359-C:4, I, :5, II-a (2009), and his motion to dismiss the charges on the ground that the evidence was insufficient to establish that he took the property of another "person," *see* RSA 637:2, IV (2007), :3, I; RSA 625:11, II (2007). We affirm.

The record reveals the following facts. The defendant was the treasurer and chair of the recreation commission for the Town of Litchfield from 2005 to 2008. His responsibilities included receiving the cash and checks collected by the town and depositing them into the town's bank accounts. He was also responsible for signing town checks to vendors. He was not authorized to pay bills or make disbursements without approval from the board of selectmen. Nor did he have the authority to commingle town funds with his own funds or to transfer money from town bank accounts to his own accounts.

On February 21, 2008, the defendant went to the Hudson branch of TD Banknorth to make several transactions. The teller processed the first withdrawal from the town's bank account that the defendant requested. However, when she began to deposit the withdrawn funds into the account he specified, she discovered that, although the slip read "Town of Litchfield," it listed the defendant's personal account number. When the teller confronted the defendant, he told her to continue with the deposit, and that he would "fix it at the office." Later, she and her supervisor told the branch manager about the incident.

The branch manager notified TD Banknorth's regional security officer, who reviewed the town's and the defendant's bank accounts and discovered that there were at least six other transactions in which funds were

deposited into the defendant's personal account, and not into the town's account, as indicated on the deposit slip. The security officer contacted the New Hampshire Attorney General's Office and requested that someone return her call so that she could report information about possible wrongdoing at the bank by an elected official. When the chief investigator for the attorney general's office returned the regional security officer's call, the security officer gave the chief investigator the defendant's name and described the transaction that prompted her investigation as well as the other transactions she had discovered in her investigation. Thereafter, the chief investigator obtained and executed search warrants for the town's and the defendant's bank records.

A grand jury indicted the defendant for two counts of theft by unauthorized taking. One indictment alleged that the defendant exercised unauthorized control of town funds in the amount of $135,000. The other alleged that he exercised unauthorized control of funds belonging to his former employer, Masstech, Inc., in the amount of $2,497.35.

Before trial, the defendant moved to suppress evidence of his financial records, arguing that they were obtained in violation of the New Hampshire Right to Privacy Act. See RSA ch. 359-C (2009 & Supp. 2010). The motion was denied.

At the close of the State's case, the defendant moved to dismiss the charges on the ground that the State had failed to prove, beyond a reasonable doubt, that either the town or Masstech, Inc. was a "person" within the meaning of RSA 625:11, II. See RSA 637:2, IV, :3, I. The trial court denied the motion, and this appeal followed.

The defendant first argues that the trial court erroneously denied his motion to suppress. He contends that because RSA 359-C:4, I, precluded the attorney general's chief investigator from requesting or receiving information contained in his financial records, the warrants based upon this information were unlawful, and the evidence seized pursuant to the warrants should have been suppressed. See State v. Flynn, 123 N.H. 457, 465 (1983) (suppression of any evidence obtained in violation of the Right of Privacy Act is proper remedy).

"In reviewing the trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is de novo." State v. Johnson, 159 N.H. 109, 111 (2009).

Resolving this issue requires that we engage in statutory interpretation, which presents a question of law that we review de novo. Petition of George, 160 N.H. 699, 702 (2010). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the

legislature might have said or add language that the legislature did not see fit to include. *Id.* We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *In re Alex C.*, 161 N.H. 231, 235 (2010). Moreover, we do not consider the words and phrases in isolation, but rather within the context of the statute as a whole. *Id.*

The Right to Privacy Act prohibits government officials from requesting or receiving, and financial institutions from providing, customer financial or credit records, or the information they contain, except under certain specified circumstances. *See* RSA ch. 359-C. It provides three remedies for violations of the Act: (1) quashing of an administrative or judicial subpoena, *see* RSA 359-C:8, I(c), :10, I(b) (2009); (2) criminal penalties, *see* RSA 359-C:12 (2009); and (3) injunctive relief, *see* RSA 359-C:14 (2009). *See Cross v. Brown*, 148 N.H. 485, 486 (2002).

The stated purpose of the Act "is to protect the confidential relationship between financial institutions and creditors and their respective customers." RSA 359-C:2, II (2009). Towards this end, RSA 359-C:4, I, provides:

> Except as provided in RSA 359-C:11, no officer, employee, or agent of a state or local agency or department thereof, *in connection with a civil or criminal investigation of a customer*, whether or not such investigation is being conducted pursuant to formal judicial or administrative proceedings, may request or receive copies of, or the information contained in, the financial or credit records of any customer from a financial institution or creditor unless the financial or credit records are described with particularity and are consistent with the scope and requirements of the investigation giving rise to such request and:
>
> (a) Such customer has authorized such disclosure under RSA 359-C:7;
>
> (b) Such financial records are disclosed in response to an administrative subpoena meeting the requirements set forth in RSA 359-C:8;
>
> (c) Such financial records are disclosed in response to a search warrant meeting the requirements set forth in RSA 359-C:9; or
>
> (d) Such financial records are disclosed in response to a judicial subpoena or subpoena duces tecum pursuant to RSA 359-C:10.

(Emphasis added.)

RSA 359-C:5, I (2009) similarly provides:

> Except in accordance with requirements of RSA 359-C:7, 359-C:8, 359-C:9 or 359-C:10, no financial institution or creditor, nor any director, officer, employee, or agent thereof may provide or authorize another to provide to an officer, employee or agent of a state or local agency or department thereof any financial, or credit records, copies thereof, or the information contained therein *if the director, officer, employee or agent of the financial institution or creditor knows or has reasonable cause to believe that such financial or credit records or information are being requested in connection with a civil or criminal investigation of the customer*, whether or not such investigation is being conducted pursuant to formal judicial or administrative proceedings.

(Emphasis added.)

Thus, when a criminal or civil investigation is pending, RSA 359-C:4, I, precludes the government from requesting or receiving, and RSA 359-C:5, I, precludes a financial institution from providing, a bank customer's financial records or the information contained therein except pursuant to legal process or with the customer's authorization. *See* RSA 359-C:7 (2009) (process for obtaining customer's authorization), :8 (2009) (process for obtaining administrative subpoena or summons), :9 (2009) (process for obtaining financial records by search warrant), :10 (2009) (process for obtaining records by judicial subpoena or subpoena duces tecum).

The exceptions to the prohibitions set forth in RSA 359-C:4, I, and RSA 359-C:5, I, are contained in RSA 359-C:11 (Supp. 2010) and RSA 359-C:5, II-a. RSA 359-C:11, II explains the circumstances under which law enforcement or the county attorney may obtain a customer's otherwise confidential financial information when a criminal or civil investigation is pending without legal process or the customer's authorization. *See State v. Stearns*, 130 N.H. 475, 482-83 (1988). It provides:

> When any police or sheriff's department or county attorney in this state certifies to a financial institution in writing that a crime report has been filed which involves the alleged fraudulent use of drafts, checks or other orders drawn upon any financial institution in this state, such police or sheriff's department or county attorney may request a financial institution to furnish, and a financial institution shall supply, a statement setting forth the following information with respect to a customer account specified by the police or sheriff's department or county attorney for a period of 30 days prior to and up to 30 days following the date of occurrence of the alleged illegal act involving the account:
>   (a) The number of items dishonored;

(b) The number of items paid which created overdrafts;

(c) The dollar volume of such dishonored items and items paid which created overdrafts and a statement explaining any credit arrangement between the financial institution and customer to pay overdrafts;

(d) The dates and amounts of deposits and debits and the account balance on such dates;

(e) A copy of the signature appearing on a customer's signature card;

(f) Date account opened and, if applicable, date account closed.

Similarly, RSA 359-C:11, I, and RSA 359-C:5, II-a explain when a financial institution may disclose information even without legal process or the customer's authorization. RSA 359-C:11, I, provides that "[n]othing in this chapter" prohibits a financial institution from "disseminat[ing] . . . any financial or credit information which is not identified with, or identifiable as being derived from, the financial or credit records of a particular customer." Under this provision, therefore, a financial institution may provide information that is not identifiable with a particular customer.

Additionally, under RSA 359-C:5, II-a, a financial institution may disclose a customer's otherwise confidential financial information to the county attorney or attorney general when the financial institution has reasonable cause to believe that the customer is using its services to commit fraud. RSA 359-C:5, II-a provides:

This section is not intended to prevent a financial institution from disclosing to the county attorney or the attorney general, or either of their authorized designees, the financial or credit records of a customer or any other person, or the information contained therein when the director, officer, employee or agent of the financial institution has reasonable cause to believe the customer, or other person, is utilizing the services of the institution to defraud the institution or any other person.

In the instant case, the attorney general's office was not engaged in a civil or criminal investigation of the defendant either when the bank's regional security officer contacted it or when the chief investigator returned the security officer's call. Because there was no pending criminal or civil investigation of the defendant, RSA 359-C:4, I, does not apply, and the defendant's reliance upon it is misplaced. Contrary to his assertions, RSA 359-C:4, I, did not prohibit the attorney general's office from requesting or receiving the defendant's otherwise confidential financial information.

■ Similarly, because the regional security officer did not know and had no reasonable cause to believe a civil or criminal investigation was being conducted about the defendant when she called the attorney general's office to report his misconduct, or when the chief investigator returned her call, RSA 359-C:5, I, also does not apply. RSA 359-C:5, I, therefore, did not preclude the regional security officer from providing the attorney general's office with the defendant's otherwise confidential financial information.

■ Disclosure was permissible pursuant to RSA 359-C:5, II-a. Having "reasonable cause to believe" that the defendant was using the bank's services to "defraud" the town, the regional security officer revealed the defendant's confidential financial information to the attorney general's chief investigator. RSA 359-C:5, II-a. Armed with this information, the attorney general's office lawfully applied for and obtained warrants for the defendant's and the town's financial records, as provided in RSA 359-C:9. *See State v. Sheedy*, 124 N.H. 738, 740-42 (1984). Therefore, the statutory scheme was complied with, and the warrants issued based upon the information the bank disclosed pursuant to RSA 359-C:5, II-a were not invalid. We hold, thus, that the trial court did not err when it denied the defendant's motion to suppress.

The defendant next asserts that the trial court erroneously denied his motion to dismiss the charges at the close of the State's case on the ground that the State failed to prove that either the town or Masstech, Inc. was a "person" within the meaning of RSA 625:11, II. "Because the defendant chose to present a case after unsuccessfully moving to dismiss, . . . the issue on appeal . . . is the sufficiency of the evidence and we review the entire trial record to make that determination." *State v. Hull*, 149 N.H. 706, 711-12 (2003).

We assume, without deciding, that the defendant is correct when he contends that to convict him of theft by unauthorized taking, the State had to prove, beyond a reasonable doubt, that he took the property of a "person" within the meaning of RSA 625:11, II. *See* RSA 637:2, IV; RSA 637:3, I. To prevail upon his sufficiency of the evidence claim, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found, beyond a reasonable doubt, that the town and Masstech, Inc. were "persons" as defined by RSA 625:11, II. *See State v. Evans*, 150 N.H. 416, 424 (2003) (discussing sufficiency of evidence burden of proof generally).

■ RSA 625:11, II defines a "person" to "include any natural person and, a corporation or an unincorporated association." Even if we assume, without deciding, that RSA 625:11, II, sets forth a comprehensive list of

what constitutes a "person" under the Criminal Code, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that both the town and Masstech, Inc. were persons under this statute.

There was abundant evidence that the town is a town. There was also ample evidence that Masstech, Inc. is a corporation. Given this evidence and all reasonable inferences from it, viewed in the light most favorable to the State, we hold that a rational trier of fact could have found, beyond a reasonable doubt, that both the town and Masstech, Inc. were "persons" within the meaning of RSA 625:11, II. *See* RSA 31:1 (2000) ("Every town is a body corporate and politic, and by its corporate name may sue and be sued, prosecute and defend, in any court or elsewhere."); RSA 21:9 (2000) ("The word 'person' may extend and be applied to bodies corporate and politic as well as to individuals.").

*Affirmed.*

DUGGAN, HICKS and CONBOY, JJ., concurred.