Merrimack
No. 82-154

## The State of New Hampshire

v.

## Sean Sheedy

April 13, 1984

*Gregory H. Smith,* attorney general (*Paul Barbadoro,* assistant attorney general, on the brief, and *Robert B. Muh,* assistant attorney general, orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant appeals from his conviction in the Superior Court (*Souter,* J.) of three counts of forgery, as defined by RSA 638:1. The defendant argues, *inter alia,* that the Superior Court (*DiClerico,* J.) erred in failing to grant his pre-trial motion to suppress. We agree, and therefore reverse.

At trial it was established that the defendant was an employee of G.S.C. Systems (GSC) and had the authority to write checks on the GSC account with the Bank of New Hampshire (bank). Two delivery men for United Parcel Service testified that the defendant paid them for three shipments of merchandise with three checks drawn on the GSC account. Each of the checks had the words "certified" and "pay any bank" stamped on them.

One driver testified that he had accepted a check for $824.64 payable to Edcor Corporation because of the "certified" marking on it. The other driver stated that he questioned the defendant concerning two checks, in the amounts of $757 and $1,176.23, payable respectively to Data Signal and Edcor Corporation. This second driver testified that the defendant told him that the checks were certified at the bank.

The checks in question were dishonored by the bank because the GSC account, at that time, had insufficient funds. An official of the bank testified that the word "certified" stamped on the checks had not been placed there by the bank and that the GSC account was overdrawn at the time that the checks were written.

The three checks that were the basis of the defendant's conviction were obtained by the Hooksett police following the execution of two search warrants, issued by the Hooksett District Court. The war-

rants authorized the police to search the "records, statements and signature card" and the "entire recorded contents" of the GSC account at the bank.

The defendant argues that the checks in question should not have been introduced into evidence because they were the fruit of an illegal search of the GSC account at the bank. The defendant maintains that the affidavits in support of the search warrants were defective in that they failed to state whether the knowledge contained in them was personally known by the affiant or was based upon another source. He also maintains that they were defective because they failed to describe with particularity the items to be seized. The defendant makes his legal arguments with reference to the Fourth Amendment to the United States Constitution, part I, article 19 of the New Hampshire Constitution, and RSA chapter 359-C (Supp. 1981), the New Hampshire Right to Privacy Act.

RSA chapter 359-C (Supp. 1981) specifically governs the procurement of search warrants directed at financial records. As we held in *State v. Flynn*, 123 N.H. 457, 465, 464 A.2d 268, 274 (1983), the suppression of any evidence obtained in violation of the Privacy Act is an appropriate remedy to vindicate the purpose behind the legislature's passage of the Privacy Act. For the defendant to be entitled to that remedy, it must be shown that rights conferred on the defendant by the Privacy Act were violated. *Id.* at 466, 464 A.2d at 274.

> "The right of privacy in financial records afforded by RSA chapter 359-C (Supp. 1981) is limited to those individuals who meet the statutory definition of 'customer' . . . RSA 359-C:3, VI (Supp. 1981) defines 'customer' as 'any person who has transacted business with or has used the services of a financial institution, or credit reporting agency or for whom a financial institution has acted as a fiduciary.'"

*Id.* We hold that the defendant was a "customer" due to the authority he had to draw checks on the GSC account.

As a statutory customer, the defendant was entitled to have the financial records of the GSC account remain free from public scrutiny. RSA 359-C:9 (Supp. 1981) does, however, authorize police officers to obtain financial records of an account with a bank so long as this is done pursuant to a search warrant. RSA 359-C:4, I (Supp. 1981) further provides that no one may obtain the financial records of a customer "unless the financial, toll or credit records are described with particularity and are consistent with the scope and

requirements of the investigation giving rise to such request . . . ." We hold that this provision contained in RSA 359-C:4, I (Supp. 1981) must be read into the requirements for obtaining a warrant to search or obtain financial records, as authorized by RSA 359-C:9 (Supp. 1981).

■ Accordingly, an affidavit presented to a magistrate, seeking a search warrant pursuant to RSA 359-C:9 (Supp. 1981), must describe with particularity the records which are needed in connection with a civil or criminal investigation of the customer. These requirements would be in addition to the minimum constitutional requirements for the issuance of a search warrant. *See, e.g., State v. Marcotte,* 123 N.H. 245, 248, 459 A.2d 278, 280 (1983). Assuming these requirements are met, the search warrant itself must limit the scope of the search to reach only those records which have been described with particularity in the affidavit.

The first search warrant which was issued by the Hooksett District Court authorized the search of the "records, statements and signature card" of the GSC account at the bank. In order to determine whether the scope of the search comported with the strictures of the Privacy Act, we must examine the affidavit that formed the basis for the issuance of this warrant.

The affiant is John P. Charron, a detective with the Hooksett Police Department. The following fairly summarizes Detective Charron's attestations: that he has knowledge of a certain check, which was drawn on the GSC account, dated October 1, 1979, and signed by the defendant; that this check was returned to Light Lab Corporation by the bank because there were insufficient funds in the GSC account; that Light Lab Corporation notified the defendant of the dishonor and obtained no satisfaction; that Light Lab Corporation informed the Hooksett Police Department of these facts; that the Hooksett police, in turn, notified the defendant of these facts; that the defendant made no attempt to provide sufficient funds for the check; that these facts provide a reasonable basis for believing that at the time of the making of the check, there were insufficient funds in the GSC account to cover the check; that, if so, the defendant had violated RSA 638:4, a felony; and that on these facts, a search warrant of the record center of the bank for the records of the GSC account and for the account-signature card is requested.

This affidavit provided a sufficient basis for a finding that there was probable cause to believe that the defendant had contravened RSA 638:4 with respect to the one check issued to Light Lab Corporation. The affidavit alludes to no facts on the basis of which the defendant could be believed to have issued bad checks on any other

occasion. Consequently, the search warrant should have been tailored to search for evidence that would substantiate the police officer's belief that at the time the check in question was written there were insufficient funds in the GSC account. To find this evidence, the police need only have had access to the records of the GSC account that pertained to the time that the check was issued. The search warrant, however, was not so limited; rather, it authorized the police to examine all the records of the GSC account.

It would be inconsistent with the privacy rights conferred on our citizens by RSA chapter 359-C (Supp. 1981) for us to sanction the wholesale denuding of the privacy of financial records on such a thin premise.

We therefore hold, as a matter of law, that the affidavit of Detective Charron failed to provide the proper support for the issuance of the warrant in question and for the ensuing search. *See State v. Marcotte*, 123 N.H. 245, 248, 459 A.2d 278, 280 (1983). We further hold that the three checks that were the subjects of the defendant's convictions were the fruit of this illegal search. Consequently, the defendant's motions to suppress the three checks should have been granted. *See State v. McGann*, 124 N.H. 101, 106–07, 467 A.2d 571, 574 (1983); *State v. Hanson*, 113 N.H. 689, 313 A.2d 730 (1973).

*Reversed.*

SOUTER, J., did not sit; the others concurred.