Strafford
No. 82-367

# The State of New Hampshire

## v.

# Peter Fleming

July 26, 1984

*Gregory H. Smith,* attorney general (*Paul J. Barbadoro,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. Two issues are presented for our determination in this case. The first is whether a Trial Court's (*Nadeau,* J.) instructions to a jury on an indictment for second-degree murder must include an explanation of the term "malice aforethought." The second is whether the trial court erred in sentencing the defendant to pay $36,000 in restitution to the victim's family. We hold that the use of the term "malice aforethought" is not required in a jury charge for second-degree murder. In addition, we find that the trial court erred in sentencing this defendant to make the restitution ordered.

The defendant was indicted for second-degree murder, RSA 630:1-b. The court's instructions to the jury included charges on second-degree murder; manslaughter, RSA 630:2 (Supp. 1983); and negligent homicide, RSA 630:3. The charges contained the words "knowingly," "recklessly," and "negligently." To clarify the meaning of these words, the court read the appropriate definitions from the Criminal Code, RSA 626:2, II(b)–(d). The defendant contends that the court's use of the legislature's definitions, without explaining the common-law term "malice aforethought," was reversible error.

■■ The defendant cites language in a recent opinion of this court which states that: "The difference between murder and manslaughter is the presence or absence of malice aforethought." *State v. Darcy,* 121 N.H. 220, 222, 427 A.2d 516, 517 (1981). He argues that this language entitles him to have the jury instructed on "malice aforethought" as that term developed at common law. The reference in *Darcy* was merely judicial shorthand traditionally understood as an elaboration of the statute and *not* a separate definition to be mentioned to a jury. "[T]he specification of criminal offenses is the function of the legislature and not of the courts." *State v. Cutting,* 114 N.H. 200, 203, 317 A.2d 553, 554 (1974).

■ The trial court followed the precise language of the statute to define the elements of the crime charged, and the definition of the crime does not include the term "malice aforethought." *See* RSA 630:1-b. Accordingly, we hold that the charge was not erroneous and affirm the defendant's conviction.

The defendant also challenges the restitution order imposed at the sentencing hearing. We hold that the trial court's application of the restitution statute was erroneous and that the assessment of $36,000 thereunder must be vacated.

The legislature has authorized restitution to the victims of crimes, RSA 651:62–:67 (Supp. 1983), by providing that: "Any offender may be sentenced to make restitution." RSA 651:63 (Supp. 1983). Calculation of the appropriate restitution amount has been left to the court. Because the assessment of damages to an individual has traditionally been performed in separate civil actions, we first consider whether an order of restitution is equivalent to an award of civil damages.

In the usual criminal case, the value of the loss suffered by the victim is immaterial, except that in crimes like theft it may be relevant for the grading of the offense. *See, e.g.,* RSA 634:1, III(d) (Supp. 1983); RSA 637:11. In the case of a homicide prosecution, the monetary value of the loss is not considered. Restitution may be inappropriate where a civil action is available to compensate for the unliquidated loss suffered. *See* RSA ch. 556; RSA 507:8-a; *see also* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 HARV. L. REV. 931, 933 (1984) (hereinafter Harvard Note).

A victim's right to bring a civil action is not affected by an order of restitution. RSA 651:65 (Supp. 1983). Nor is the right to proceed civilly in tort prejudiced by a finding of guilt in a criminal prosecution. *Rullo v. Rullo,* 121 N.H. 299, 300, 428 A.2d 1245, 1246 (1981). A person sentenced to make restitution may petition the court for revocation of that part of the sentence under certain conditions. RSA 651:66 (Supp. 1983).

We agree with the analysis by the Michigan Court of Appeals, which stated:

> "The probation statute does not create a substitute for an action for civil damages. Criminal and civil liability are not synonymous. A criminal conviction does not necessarily establish the existence of civil liability. Civil liability need not be established as a prerequisite to the requirement of restitution as a probation condition; such restitution for personal injury, therefore, generally should be more limited in scope than civil damages."

*People v. Heil,* 79 Mich. App. 739, 748, 262 N.W.2d 895, 900 (1977). The victim's right to civil relief against a criminal defendant is not impaired by a restitution award, and the beneficiary of a restitution award may lose the right to receive payment upon the successful petition of the defendant. We hold, therefore, that an order of restitution in a criminal case is not equivalent to an award of civil damages.

■ Since restitution is not equivalent to civil damages, how are the losses recoverable through restitution to be determined? When the legislature enacted the Restitution Act, RSA 651:62–:67 (Supp. 1983), it stated the purpose and limits of restitution in the preamble:

"I. The legislature finds and declares that the victims of crimes often suffer losses through no fault of their own and for which there is *no compensation*. It also finds that repayment, in whole or in part, by the offender to the victim of his crime can operate to *rehabilitate* the offender in certain instances. It is the purpose of this act to encourage the *compensation* of victims by the person most responsible for the loss incurred by the victim, the offender. Restitution by the offender can serve to reinforce the offender's sense of responsibility for the offense, to provide him the opportunity to pay his debt to society and to his victim in a constructive manner, and to ease the burden of the victim as a result of the criminal conduct.

II. The legislature recognizes that a crime is an offense against society as a whole, not only against the victim of the crime, and that restitution for victims is therefore ancillary to the central objectives of the criminal law. It intends restitution to be applied only when other purposes of sentencing can be appropriately served. It does not intend the use of restitution to result in preferential treatment for offenders with substantial financial resources."

Laws 1981, 329:1. (Emphasis added.) In accordance with this express legislative intent, we hold that restitution may be ordered when three criteria are met: (1) restitution will serve to rehabilitate the offender; (2) restitution will compensate the victim; and (3) no other compensation is available.

■ ■ To determine whether restitution will serve a rehabilitative purpose, the court should closely examine the personal traits, characteristics, education, training, and situation of the defendant. "Most courts, recognizing that the frustration of a defendant who is ordered to pay an amount exceeding his financial resources may adversely affect his prospects for rehabilitation, gear the amount of restitution to the offender's ability to pay." Harvard Note, *supra* at 940; *see State v. Blanchard*, 409 A.2d 229, 237–39 (Me. 1979); *State v. Benoit*, 131 Vt. 631, 634–35, 313 A.2d 387, 389 (1973).

■ The amount of compensation available to victims of crimes has been limited by the legislature in the definition of economic loss

in the restitution statute. RSA 651:62, III (Supp. 1983) provides: "'Economic loss' means pecuniary detriment suffered by the victim, including the value of damaged, destroyed or lost property, reasonable medical costs and loss of employment income." Therefore, we believe that the legislature intended restitution to cover only such losses.

The definition of "economic loss" is limited by the phrase "pecuniary detriment." Therefore, only those losses which are easily ascertained and measured, that is, only liquidated amounts, should be recovered under this statute. Hospital bills, the value of property, and lost employment income resulting from an offender's criminal acts are easily ascertainable; damages for pain and suffering, loss of earning capacity, and wrongful death, as contemplated by RSA 556:12, are not. See Harvard Note, supra at 940; State v. Stalheim, 275 Or. 683, 686–88, 552 P.2d 829, 831–32 (1976).

In order for a court to impose restitution, it must determine that no other compensation is available to the victim. We interpret this express legislative intent literally and realistically. The fact that a victim can bring a civil suit for damages against the defendant is not dispositive. A judgment against an unemployed criminal would be of little assistance because collecting such a judgment would be a cumbersome and difficult, if not impossible, task. An order of restitution, however, may be enforced by the contempt powers of the court. RSA 651:67 (Supp. 1983). Accordingly, should a court determine that a criminal defendant is judgment-proof, i.e., that pursuing a civil judgment would be impractical, it should also find that, as a practical matter, no other compensation is available to the victim.

After oral argument, we directed the trial court to prepare findings and rulings on the elements contained in the $36,000 restitution order and on how the amount was determined. The response indicated that the court only considered: the health and ability to work of the victim and defendant; that the victim left a spouse and three minor children; that the widow was currently unemployed; that tuition at the University of New Hampshire exceeds $4,000 annually; and that the payment terms imposed by the court were substantially below those customarily awarded in domestic relations matters. These factors are not a proper basis for a $36,000 restitution award, given the statutory requirements we have outlined.

The defendant has been sentenced to a long period of incarceration and is presently indigent; therefore, he will be unable to pay any amount of restitution for a long time. In such a situation, "to

require restitution serves neither the penological purpose of assisting in the rehabilitation of the offender nor the social objective of making the victim adequately whole." *State v. Blanchard*, 409 A.2d 229, 239 (Me. 1979); *see* Harvard Note, *supra* at 937–41. Nothing in this opinion should be construed as limiting the right of the victim's family to sue for appropriate damages. *See* RSA 621:5; RSA 651:65 (Supp. 1983).

The result we reach avoids a number of constitutional problems, such as inadequate notice of the scope of the hearing, and lack of a trial by jury in assessing unliquidated damages. At least one court has found such hearsay-based procedures to be unconstitutional. *United States v. Welden*, 568 F. Supp. 516 (N.D. Ala. 1983) (Federal restitution statute, 18 U.S.C. §§ 3579, 3580, violates fifth and seventh amendments).

The order of restitution is vacated; otherwise, the judgment below is affirmed.

*Affirmed in part; reversed in part; remanded.*