**In re Rene J. MILONE, Debtor.**

**Rene J. MILONE, Plaintiff,**

**v.**

**STATE OF NEW HAMPSHIRE, Vyco Industries, and Barton Goodeve, Defendants.**

**Bankruptcy No. 86–299.**
**Adv. No. 86–125.**

United States Bankruptcy Court, D. New Hampshire.

May 5, 1987.

David Trovato, Andover, Mass., for plaintiff.

David Peck, Concord, N.H., for State of N.H.

Nathan Foose, Manchester, N.H., for Bardon Goodeve.

Robert Walsh, Manchester, N.H., for Vyco.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The chapter 7 debtor in this bankruptcy case seeks an injunction in this adversary proceeding under § 105 of the Bankruptcy Code to prohibit further action by the individual defendants (who had received "bad checks" from the debtor prior to bankruptcy) and the state criminal prosecutors "with regard to collection of these debts and/or criminal prosecution." The case raises the question whether any such injunctive relief is possible, as a matter of law, following the recent decision of the United States Supreme Court in *Kelly v. Robinson*, — U.S. —, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

The debtor filed his chapter 7 bankruptcy petition in this court on July 7, 1986. Prior to that time the debtor had written and issued checks totalling $2,779.38 to the creditor, Vyco Industries, which checks were not honored by the drawee bank. Also prior to the bankruptcy filing, on June 20, 1986, the debtor wrote a check in the amount of $1,208.00 to the creditor, Barton Goodeve, which check likewise was not honored by the drawee bank.

Barton Goodeve complained to the Peterborough Police Department, and Vyco Industries complained to the Salem Police Department, with regard to the bad checks that they had received from the debtor. Both police departments advised the debtor that criminal charges under the New Hampshire "Bad Check" statute would be brought if the debtor did not make the checks good.

The New Hampshire Statute in question is N.H. RSA 638:4, "Issuing Bad Checks", which provides in pertinent part as follows:

I. A person is guilty of issuing a bad check if he issues or passes a check for the payment of money knowing or believing that it will not be paid by the drawee and payment is refused by the drawee.

I—a. A person who issues or passes a bad check is subject to prosecution in the jurisdiction in which he issued or passed the check.

II. For the purposes of this section, as well as in any prosecution for theft committed by means of a bad check, a person who issues a check for which payment is refused by the drawee is presumed to know that such check would not be paid if he had no account with the drawee at the time of issue.

III. It is an affirmative defense that the actor paid the amount of the check, together with all costs and protest fees, to the person to whom it was due, within 14 days after having received notice that payment was refused. The actor's failure to make such payment within 14 days after receiving notice that payment was refused shall be prima facie evidence of a violation of paragraph I of this section.

\*      \*      \*      \*      \*      \*

V. In addition to any other sentence which it imposes, the court shall, if restitution is authorized under RSA 651:63, order any person convicted of a violation of this section to make restitution to the person to whom the check was due. Such restitution shall include the amount of the check and may include all reasonable costs and protest fees.

The foregoing statutory provision refers to the separate general restitution provi-

sion in the "Sentences" portion of the New Hampshire Criminal Code. That provision, codified as N.H.RSA 651:63, "Restitution Authorized", provides as follows:

Any offender may be sentenced to make restitution. Such restitution may be in addition to a fine and may be a condition of probation or parole. Restitution may also be authorized as a condition of any work release program administered under RSA 651:19 or 25.

While the debtor reads the statutory provisions as *mandating* restitution orders in all bad check criminal cases, the New Hampshire courts have not so construed these statutory provisions. *State v. Fleming*, 125 N.H. 238, 480 A.2d 107 (N.H.1984). The New Hampshire Supreme Court has determined that restitution is a discretionary matter and should only be ordered "when three criteria are met: (1) restitution will serve to rehabilitate the offenders; (2) restitution will compensate the victim; and (3) no other compensation is available." *State v. Fleming*, supra, at p. 242, 480 A.2d 107.

### KEY FACTS

In the present case, the debtor had not made good either of the bad checks prior to his filing of bankruptcy on July 7, 1986. Goodeve gave him a written notice on July 15, 1986 that if the check was not made good within 14 days of receipt of his letter he, Goodeve, would "file charges against you with the local law enforcement authorities." As indicated above, Goodeve did complain to the Peterborough Police Department and that department again put the debtor on notice of possible criminal charges.

With regard to the Vyco Industries check, the Salem Police Department sent the debtor a letter on August 19, 1986 noting that a complaint against him had been recorded with regard the Vyco bad check and advising that a complaint and a warrant for his arrest would be sought after September 2, 1986 if the check was not made good.

On October 24, 1986 the county attorney for Hillsborough County (who served as the State of New Hampshire deputy for criminal proceedings in such matters) obtained the following felony indictment against the debtor:

The GRAND JURORS FOR THE STATE OF NEW HAMPSHIRE, on their oath, present that Rene J. Milone of Salem, NH in the County of Rockingham aforesaid on or about the 20th day of June in the year of our Lord one thousand nine hundred and eight-six at Peterborough in the County of Hillsborough aforesaid, with force and arms, did, purposely utter a check drawn of the account of J & M Home Remodeling Corporation at Indian Head National Bank, dated June 20, 1986, payable to Barton Goodeve in the amount of One Thousand Two Hundred Eight Dollars and No Cents ($1,208.00), knowing that it would not be paid by the drawee and for which payment was in fact refused by the drawee because the said account contained insufficient funds at the time contrary to the form of the Statute, in such case made and provided, and against the peace and dignity of the State.

No criminal charges were ever filed with regard to the Vyco Industries check. On October 27, 1986 the debtor's attorney wrote to Lieutenant LeBlanc of the Salem Police Department inquiring as to whether the "pending charges" against the debtor would be dismissed if Vyco Industries was paid the amount of the bad check. Lieutenant LeBlanc replied in a letter of October 30, 1986 in the affirmative stating:

In reference to Mr. Rene J. Milone's bad check to Vyco Industries. If payment is made in amount of two thousand seven hundred eighty nine dollars and thirty eight cents ($2,789.38), in cash or money order, there will be no court action taken against your client.

In response to a second inquiry from the debtor's attorney, the prosecutor for the Town of Salem advised in a letter of January 2, 1987 that "as I have stated previously, we have no plans to bring forth criminal

charges at this time."[1] The background for this decision is reflected in a separate letter of December 29, 1986 from the prosecutor advising:

Pursuant to your request, I checked the police records regarding any outstanding charges facing Mr. Milone. The record check showed that on August 2, 1986 Salem Police received a bad check written by Mr. Milone. Apparently, at the time, the prosecutor, Detective Michael Downing decided not to prosecute because he understood that Mr. Milone would be filing for bankruptcy and would be unable to make restitution. We have no plans to reopen the case at this time.

The debtor filed its adversary complaint for an injunction in this court on November 28, 1986. After various preliminary hearings and a pre-trial conference, the case was ultimately heard at trial on April 2, 1987. Under the pre-trial order, the State of New Hampshire's Motion To Dismiss This Proceeding, on the grounds that as a matter of law the court had no jurisdiction to enjoin the State Court criminal proceeding, was also to be determined as a part of the trial ruling. The State of New Hampshire and Barton Goodeve answered the complaint. The defendant Vyco Industries did not answer the complaint. Considerable documentary evidence was received at trial, together with testimony of the prosecutor involved in handling the criminal proceeding relating to the bad check issued to Goodeve.

The evidence received by this court establishes—with regard to the criminal prosecution on the Goodeve bad check—that the ongoing control of that criminal proceeding is solely in the hands of the prosecuting lawyer and is not controlled by Barton Goodeve either directly or indirectly.[2] With regard to the possible criminal proceeding that could be instituted with re-

gard to the Vyco Industries check, the evidence indicates that *that* prosecution would be "turned on or off" depending upon whether the debtor made good the bad check involved. As indicated, the Salem Police Department and the local prosecuting official involved, do not presently intend to reopen the case or proceed with a criminal action against the debtor.

## JURISDICTION AND COMITY

It has been crystal clear at least since the leading case of *In re Moore*, 111 F. 145, 148–149 (W.D.Ky.1901), that a true criminal proceeding in the "pro bono publico" sense is not affected by bankruptcy proceeding involving the criminal defendant. It is now determined under *Kelly v. Robinson, supra*, that this remains true even if restitution is one of the criminal penalties imposed under modern criminal statutes.

It should be noted however that the question of the dischargeability of a criminal restitution penalty is not involved in the present case. That question only arises since the State of New Hampshire takes the position in its Motion To Dismiss that, as matter of law under the *Kelly* decision, a bankruptcy court cannot enjoin a criminal proceeding involving a bad check offense even though a restitution obligation may be imposed upon the bankrupt debtor in the criminal proceeding.

In my opinion *Kelly v. Robinson* does not disturb those decisions which hold that a bankruptcy court can enjoin state criminal proceedings where there is an affirmative showing that those proceedings are in fact employed merely as a collection device for recipients of bad checks and do not involve a true vindication of public rights. See, e.g., *In re Penny*, 414 F.Supp. 1113 (W.D. N.C.1976); *In re Whitaker*, 16 B.R. 917 (Bankr. M.D.Tenn.1982); *In re Alan I.W. Frank Corp.*, 19 B.R. 41 (Bankr. E.D.Pa.1982); *In re Strassmann*, 18 B.R.

---

1. Coincidentally, the records of this court indicate that Vyco Industries itself filed a chapter 11 bankruptcy petition with this court on January 7, 1987.

2. New Hampshire does provide a procedure for private prosecutions for crime. See N.H. RSA

592–A:7; McNamara, *New Hampshire Practice, Criminal Practice & Procedure*, §§ 303, 304 (1980). The present case does not involve use of that procedure regarding either unpaid check.

346 (Bankr. E.D.Pa.1982); *In re Holder*, 26 B.R. 789, 791 (Bankr. M.D.Tenn.1982). *Cf. also, In re Brown*, 39 B.R. 820 (M.D. Tenn. 1984); *In re Seidelman*, 57 B.R. 149 (Bankr. D.Md.1986); Kratsch & Young, "Criminal Prosecution and Manipulative Restitution: The Use of State Criminal Courts for Contravention of Debtor Relief," 1984 *Annual Survey Bankruptcy Law*, 107–109.

The narrow basis for decision in *Kelly v. Robinson* was a determination that § 523(a)(7) preserved the debt in question from discharge since the "victim" in that case also happened to be a governmental unit. The rest of the discussion by the majority in *Kelly v. Robinson* is primarily bottomed upon the strong federal policy of comity requiring that federal courts decline to interfere with ongoing state criminal proceedings except in very extraordinary situations. The Supreme Court relied upon *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in that regard. The *Younger* decision itself recognizes that there *are* extraordinary situations in which an injunction against enforcement of state criminal statutes could properly issue from a federal court.

The *Younger* court distinguished its case from the prior decision in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), holding an injunctive complaint sufficient where the complaint made substantial allegations that:

> "the threats to enforce the statutes against appellants are not made with any expectation of securing valid convictions, but rather are part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana." 380 U.S. at 482, 85 S.Ct. at 1118–1119.

Accordingly, the Motion To Dismiss by the State of New Hampshire in the present case must be denied, to the extent that it is based upon the legal proposition that bankruptcy courts no longer have jurisdiction to issue injunctive orders against state criminal proceedings *in any circumstances* following the Supreme Court's decision in the *Kelly* case.

## CONCLUSION

■ This brings us back to the factual picture presented by the evidence in this case. With regard to the criminal prosecution relating to the Goodeve bad check I conclude that the debtor has failed to make a sufficient factual showing that the criminal prosecution in question is a subversion of normal criminal processes sufficient to bring it within the *Penny* line of cases justifying issuance of an injunction. I conclude from all of the evidence presented, and particularly the testimony of the prosecuting official involved, that *that* proceeding does involve a true criminal action in a normal sense, i.e., a vindication of public rights, and that any restitution that may be awarded as part of that proceeding will occur in light of the rehabilitative and other standards set forth in the New Hampshire statutes and by the Supreme Court of New Hampshire. *Cf., Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982).

■ With regard to the *potential* criminal prosecution that may be pursued with regard to the Vyco Industries bad check, the evidence does indicate, at least at the Salem Police Department level, that the New Hampshire statutes are being construed as permitting use of bad check charges as a mere collection device. However, there is no present need for injunctive relief on the record before this court, inasmuch as that prosecutor's file has been closed and there is no indication that it will be reopened. Moreover, this court can take judicial notice that there is little likelihood of Vyco Industries (now a debtor in this court) further pursuing criminal actions against the present debtor. Accordingly there is no need for the extraordinary relief of an injunction against state criminal authorities on the Vyco Industries check.

A separate judgment will be entered denying the relief requested by the debtor in his adversary complaint before this court.