Strafford
No. 86-453

THE STATE OF NEW HAMPSHIRE

v.

WARREN V. STEARNS

June 6, 1988

476

*Stephen E. Merrill*, attorney general (*Andrew W. Serell*, attorney, on the brief and orally), for the State.

*James Koromilas*, of Dover, by brief and orally, for the defendant.

THAYER, J. On August 12, 1986, a jury convicted the defendant, Warren Stearns, of theft by unauthorized taking contrary to RSA 637:3. The Superior Court (*Temple*, J.) sentenced him to from three to six years at the New Hampshire State Prison, with two years of the minimum sentence suspended upon good behavior. The court also fined Stearns $2000 plus penalty assessment, and ordered him to make restitution to the victim in the amount of $37,882.99. The defendant appealed, argument was heard and reargument on the restitution issue was ordered on May 2, 1988. We affirm.

The issues raised on appeal are: whether the trial court (1) properly denied the defendant's motion to suppress bank records seized pursuant to RSA chapter 359-C; (2) properly denied the defendant's motion *in limine* relative to certain evidence of his credit union account transactions; (3) properly denied the defendant's motion to quash the indictment; (4) properly denied the defendant's motion for a psychological examination of the victim; (5) properly denied the defendant's motion to dismiss; (6) properly ordered restitution to the victim; (7) abused its discretion in sentencing the defendant to from three to six years; and (8) properly admitted into evidence photocopies of cancelled checks pursuant to New Hampshire Rule of Evidence 1003.

At trial, Hilda Arkerson, then an 85-year-old widow, testified that she met the defendant after he became manager of her apartment building in September, 1984. Stearns began visiting Mrs. Arkerson at her apartment, preparing breakfast for her on a half-dozen occasions, and performing some work on her apartment in exchange for money. She testified that they developed a friendship such that she trusted Stearns implicitly.

In December 1984, Mrs. Arkerson decided to withdraw some money from one bank and consolidate it with her accounts at another bank. Because she had not yet made a will, she also decided to add Stearns's name to her bank accounts to ensure that someone would get the money should she die. When he learned of her actions, Stearns offered to deposit the withdrawn money in certificates of deposits (CD's) at his credit union. Mrs. Arkerson agreed and told Stearns he could keep the interest, but made it clear that she wanted her principal returned in June 1985, when the CD's matured.

On December 18, 1984, Mrs. Arkerson gave Stearns a cashier's check for $37,882.99. He then deposited $38,601.81 into his checking account at the Service Federal Credit Union (SFCU) branch at Pease Air Force Base on December 19, 1984.

In January, 1985, Mrs. Arkerson left for Florida. Before leaving, she gave the defendant her check register and pre-signed enough blank checks for Stearns to pay her bills. Mrs. Arkerson did not recall either how many or the numbers of the checks she left for the defendant; however, she was able to identify copies of canceled checks filled out in the defendant's handwriting. Trial testimony showed that checks numbered 470 through 475 were in the defendant's handwriting, but signed by Mrs. Arkerson. Check 477 was also in the defendant's handwriting, but was signed by the victim on February 2, after she had returned from Florida. That check was in payment for money the defendant had brought to her in Florida. Checks 476 and 478 through 489 were in the victim's handwriting and signed by her around February 14, 1985; however, trial testimony by both Mrs. Arkerson and Detective William Fenniman showed checks numbered 483 and 484 were unaccounted for in Mrs. Arkerson's check register.

Mrs. Arkerson testified that in February, 1985, she asked the defendant to return her money. The defendant told her that he could not get the money until the maturity date of the CD's, which was in June. Mrs. Arkerson also testified that on several subsequent occasions she requested that Stearns return her money and that he refused to do so. Stearns, in turn, testified that he in fact did return the money and that Mrs. Arkerson had given him a receipt for it on February 11, 1985.

Dorothy Miles, who did interior work on the apartments in Mrs. Arkerson's building and who was friendly with Mrs. Arkerson, testified that in July, 1985, the victim was very upset that the defendant had not yet returned her money. Miles testified to a telephone conversation she overheard between the victim and defendant while at Arkerson's apartment, which caused her to report the matter to the police.

On September 5, 1985, Detectives Fenniman and Miller of the Dover Police Department visited Mrs. Arkerson at her apartment. She told them that she had given Stearns approximately $37,882 to put into a high-interest-yielding account, that she asked for the money back, and that she had not yet received it. The officers then visited the defendant. He told them that he had withdrawn the money from the bank on February 10 and had given it to her on February 11. He also showed the officers a check from Mrs.

Arkerson's account, numbered 484, written out in the form of a receipt. "Pay to order" was crossed out and "received from" written in its place. The document was signed by Mrs. Arkerson, but the rest of it was in his handwriting. The check was one of the two unaccounted for in the check register.

Fenniman and Miller returned to Mrs. Arkerson's apartment with a copy of the "receipt." She told them that, while her signature was on it, she had not seen this receipt before. The police officers then reviewed some of Mrs. Arkerson's records and found a check/receipt indicating that the defendant had received $37,882.99 from Mrs. Arkerson and that her check register indicated check number 484 was unaccounted for. The officers then returned to the defendant's apartment to confront him with the information and ask him to return the money. The defendant maintained that he had returned the money, although this time he told the officers that he had not taken the money from the bank, and told the officers to leave.

On September 6, 1985, Detective Fenniman wrote a letter to the SFCU requesting, pursuant to RSA 359-C:11, II, certain information about Stearns's account, including the dates and amounts of deposits and debits, and account balances for the period December 18, 1984, through February 28, 1985. In response to the letter, Everett Stone of the SFCU called Detective Fenniman and informed him of the status of Stearns's account. Fenniman applied for and was issued a search warrant to obtain records of that account based on this conversation and conversations with Mrs. Arkerson.

At trial, the State introduced these records to show that Stearns had not made a correspondingly large withdrawal before the time he claims to have returned the $37,882.99 to Mrs. Arkerson, supporting the likelihood that he did not in fact return the money to her.

The defendant testified that on February 10, 1985, Mrs. Arkerson demanded her money back and that, rather than wait until the banks were open, he retrieved the money from a strongbox hidden in a cistern in his house. He explained that the box contained approximately $39,000 in cash and had been left to his wife by her former boyfriend, who died in 1972, and had subsequently been left to the defendant when his wife died in 1984. After retrieving the money, he tried to return it to Mrs. Arkerson, but she was not home that day. The next day he gave Mrs. Arkerson three hundred and seventy $100 bills, four $20 bills, and three $1 bills. He suggested to Mrs. Arkerson that she write out the receipt on a check because

he did not have his receipt book with him. He further testified that he wrote out the receipt because Mrs. Arkerson's handwriting was too large to fit on the check. The defendant denied telling the police that he had withdrawn money from the bank to repay Mrs. Arkerson. The jury found the defendant guilty, and he appealed.

I. *Suppression of Bank Records*

We now examine the first issue raised on appeal. The defendant claims that the trial court erred in refusing to suppress certain bank records seized pursuant to a search warrant on the grounds that (1) the supporting affidavit relied in part on evidence allegedly obtained in violation of the Right to Privacy Act, RSA chapter 359-C; (2) the warrant failed to describe with particularity the records requested; and (3) the warrant affidavit contained reckless misrepresentations.

The State responds that evidence referred to in the affidavit was lawfully obtained pursuant to RSA 359-C:11, II and that, assuming *arguendo* it was not, the search warrant was nonetheless supported by probable cause independent of such information.

The first issue gives rise to the question whether the letter from the Dover police to the SFCU complied with the requirements of § 11, II of RSA chapter 359-C, the Right to Privacy Act. The defendant argues that it did not, and that the information obtained pursuant thereto (*i.e.*, information obtained orally, during the phone conversation with Everett Stone, and Stearns's bank records) was, therefore, illegally obtained, and should have been suppressed at trial.

RSA chapter 359-C restricts the disclosure by a financial institution of a customer's financial records to certain situations described in RSA 359-C:11, II, which reads:

> "II. When any police or sheriff's department or county attorney in this state certifies to a bank in writing that a crime report has been filed which involves the alleged fraudulent use of drafts, checks or other orders drawn upon any bank in this state, such police or sheriff's department or county attorney may request a bank to furnish, and a bank shall supply, a statement setting forth the following information with respect to a customer account specified by the police or sheriff's department or county attorney for a period of 30 days prior to and up to 30 days following the date of occurrence of the alleged illegal act involving the account:
>
> (a) The number of items dishonored;

(b) The number of items paid which created overdrafts;

(c) The dollar volume of such dishonored items and items paid which created overdrafts and a statement explaining any credit arrangement between the bank and customer to pay overdrafts;

(d) The dates and amounts of deposits and debits and the account balance on such dates;

(e) A copy of the signature appearing on a customer's signature card;

(f) Date account opened and, if applicable, date account closed."

RSA 359-C:11, II.

A review of the letter reveals a major flaw, violative of RSA 359-C:11, II. The statute requires that the police writing certify to the bank "that a crime report has been filed which involves the alleged fraudulent use of drafts, checks or other orders drawn upon any bank in this state." *Id.* The letter, however, merely stated that "[t]his department has received a criminal report with regard to one of your customers"; it does not, as the defendant correctly contends, state that there was "alleged fraudulent use of drafts, checks or other orders." This omission made the letter inadequate to meet the purpose of RSA chapter 359-C, which is to protect the confidential relationship between financial institutions, creditors and credit reporting agencies and their customers. *See* RSA 359-C: 2, II; *State v. Flynn*, 123 N.H. 457, 464, 464 A.2d 268, 273 (1983).

The defendant further argues that, because the letter requested records pertaining to offenses which took place "[o]n or about December 18, 198[4] through February 28, 1985," a 72-day period, the State failed to comply with the requirement that a request for bank records be limited to "a period of 30 days prior to and up to 30 days following the date of occurrence of the alleged illegal act." RSA 359-C:11, II. The State's counterargument asserts that, since it could not be determined from the facts on exactly what date Stearns's possession of the victim's money became the crime of theft by unauthorized taking, the crime should be viewed as a continuous one, spanning the 72-day period mentioned. In fact, the State contended at oral argument that the police could have asked for records pertaining to a longer period—that commencing 30 days before December 18, 1984, and ending 30 days after February 28, 1985—and still have complied with the statute. The State admits, however, that the letter should have made specific reference to the statute's 30-day rule. However, it is not necessary to decide this

issue since we have found in the defendant's favor on the aforementioned argument pertaining to the contents of Detective Fenniman's September 6, 1985 letter to the SFCU.

■ As we stated in *State v. Flynn supra*, which we cited with approval in *State v. Sheedy*, 124 N.H. 738, 740, 474 A.2d 1042, 1043 (1984), "the suppression of any evidence obtained in violation of the Privacy Act is an appropriate remedy to vindicate the purpose behind the legislature's passing of [that act]." Therefore, the information obtained by Detective Fenniman based on the September 6, 1985 letter should have been suppressed. However, the search warrant may still have been validly issued if there was other evidence to support it.

■ We now turn to the State constitutional issue raised by the defendant. The defendant contends that the search warrant did not meet the requirements of part I, article 19 of the New Hampshire Constitution in that, after striking the information contained in the search warrant that was obtained in violation of RSA chapter 359-C, the constitutional requirement of establishing probable cause no longer is met. This court, in interpreting that provision of the State Constitution, has held "that probable cause . . . must exist to support the issuance of a search warrant." *State v. Pinder*, 128 N.H. 66, 74, 514 A.2d 1241, 1246 (1986); *State v. Corey*, 127 N.H. 56, 58, 497 A.2d 1196, 1198 (1985). The trial court stated in its order on the defendant's motion to suppress that "[e]ven if the disclosure by Stone was in some way improper, the search warrant was supported by evidence obtained independently. Mrs. Arkerson provided [Det.] Fenniman with sufficient facts relating to the unauthorized taking."

■ A review of the affidavit convinces us that the trial judge was correct. If, when the disputed portions are stricken from the search warrant application, enough information remains to support a finding of probable cause, then the warrant will be upheld. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72 (1978); *State v. Valenzuela*, 130 N.H. 175, 536 A.2d 1252 (1987); *see also State v. Stiles*, 128 N.H. 81, 85, 512 A.2d 1084, 1088 (1986).

■■ As we stated in *Bradberry*, this court's review of a judge's ruling on a suppression motion

"'necessarily must reflect the contextual, commonsensical, and fact-based nature of any probable cause determination. In addition, another basic principle to which we adhere is the preference which we accord warrants, and the

deference which we afford magistrates, especially in close cases.'"

*Bradberry*, 129 N.H. 68, 74, 522 A.2d 1380, 1383 (1986) (quoting *State v. Jaroma*, 128 N.H. 423, 428, 514 A.2d 1274, 1277 (1986)) (citations omitted). The information Mrs. Arkerson provided to the police regarding her interactions with Stearns included the circumstances under which she gave the defendant $37,882.99; the fact that the victim asked the defendant to return the money; and the fact that the money was not returned. This information was contained in Fenniman's affidavit and was more than ample to support the trial judge's finding of probable cause to issue the warrant.

The defendant in his brief misrepresents the evidence when he states that, aside from the information the police obtained in the phone conversation with SFCU, all "other information attested to in the Affidavit was directly or indirectly obtained as a result of [that illegal phone conversation]." This simply is not supported by the record. In fact, the most damaging attestations in the affidavit came from the earlier interviews of the victim by the police. As the defendant's brief itself allows, "the State was mostly relying upon the alleged victim for every step of its case."

 The defendant, in a further attempt to attack the search warrant, claims that the warrant did not describe with particularity the financial records requested, as mandated by RSA 359-C:4, I. That statute provides that the financial records of a customer may not be obtained "unless the financial, toll or credit records are described with particularity and are consistent with the scope and requirements of the investigation giving rise to such request." The particularity demanded by RSA 359-C:4, I, "must be read into the requirements for obtaining a warrant to search or obtain financial records, as authorized by RSA 359-C:9." *State v. Sheedy*, 124 N.H. at 741, 474 A.2d at 1044. In *Sheedy*, which is relied upon by the defendant, there was a warrant authorizing the seizure of all the account records, rather than limiting them to the time period in which the defendant had issued a single bad check. However, the affidavit at issue here complied with the statute in identifying the institution, the account, and the time period in question, all of which were "consistent with the scope and requirements of the investigation. . . ." RSA 359-C:4, I.

The defendant also contends on appeal that the affiant, Detective Fenniman, recklessly misrepresented (1) that the location of the credit union was in Portsmouth, rather than Newington, and (2)

that the victim stated that the defendant had "stolen" the money in question, rather than that she had given him the money. The State contends that the defendant failed to properly raise the issue at trial.

■ The motion to suppress filed by the defendant, although based on *State v. Spero*, 117 N.H. 199, 371 A.2d 1155 (1977) (defendant entitled to a hearing to attack a facially sufficient affidavit if he can show intentional or reckless material misrepresentation), was general in nature and did not specify which statements in the affidavit were the alleged misrepresentations. Nevertheless, he was granted a hearing and again failed to allege the intentional or reckless misrepresentations that were material to the finding of probable cause. Thus, the trial court was never presented with the specific grounds for suppression that are now before this court. As we held in *State v. Cassell*, 129 N.H. 22, 23–24, 523 A.2d 40, 41 (1986), when issues are "not raised in the trial court, they may not be raised here on appeal."

## II. *Motion in Limine*

The second issue raised by the defendant concerns the trial court's denial of his motion *in limine* to preclude evidence pertaining to the fact that Stearns made no withdrawal from the SFCU account in an amount large enough to repay Mrs. Arkerson. The defendant argues that the introduction of such evidence at trial was unfairly prejudicial, *see* N.H. R. Ev. 403, because it created an inference (that Stearns never repaid Mrs. Arkerson) that could only be rebutted by the defendant's taking the stand "and could abridge his rights under N.H. Constitution, Part I, Article 15. . . ."

■ "'Evidence is relevant if it tends in any way to establish a proposition which is of consequence in [the] action.'" *State v. Hammell*, 128 N.H. 787, 789, 519 A.2d 307, 308 (1986) (quoting *State v. Leuthner*, 124 N.H. 638, 641, 474 A.2d 1029, 1030 (1984)). "A trial judge may exercise broad discretion when he balances the possible prejudice resulting from the admission of evidence against the probative value of the evidence." *State v. Nadeau*, 126 N.H. 120, 126, 489 A.2d 623, 627 (1985); *see State v. Hotchkiss*, 129 N.H. 260, 264, 525 A.2d 270, 272 (1987). "Viewing the evidence in the light most favorable to the prevailing party, we apply the rules of logical relevance." *State v. Leuthner, supra* at 641, 474 A.2d at 1030 (citations omitted).

The fact that Stearns never withdrew the $37,882.99 from his account was both relevant and highly probative on the issue whether he repaid the victim. As the State correctly points out, and as the transcript shows, the fact that the defendant had told the police that he had repaid the victim with other funds did not control the State's proof at trial; the defendant had changed his repayment version once, and the State had no way of knowing what proof the defendant might have presented at trial concerning the payment. The most logical source of repayment for a person in Stearns's position would have been the account into which he had deposited the "borrowed" sum. Since the State was required, in proving its case, to show that Stearns had not repaid the money, the State was justified in attempting to rule out this most obvious and logical means of repayment. Any prejudice to the defendant resulting from the introduction of this evidence was not undue or unfair prejudice, and the trial court's ruling allowing it must stand. The defendant's manner of rebuttal, if any, is his decision.

### III. *Sufficiency of the Indictment*

The third issue the defendant raises involves the sufficiency of the indictment against him. He argues that (1) the indictment and the State's bill of particulars failed to describe the exact location of the unauthorized taking; (2) the bill of particulars introduced a new theory of the offense beyond that specified in the indictment; and (3) the bill of particulars altered the date of the offense charged in the indictment.

On October 3, 1985, the Strafford County Grand Jury indicted Stearns for theft by unauthorized taking. The defendant thereafter filed a motion for a bill of particulars, and the State complied. The defendant subsequently moved to quash the indictment. The trial court denied the defendant's motion to quash, noting in particular that there was no merit in the defendant's arguments that a new offense was charged or that the date specified was insufficient. The court found that the "indictment and bill of particulars are sufficient to inform the defendant of the factual basis of the charges. The bill of particulars guards against unfair surprise to the defendant."

The defendant first argues that the bill of particulars "failed to describe the location and the place where the unauthorized control occurred." As to the defendant's first argument on this issue, we note the defendant's reliance on and misreading of this court's holding in *State v. Stiles*, 123 N.H. 680, 465 A.2d 908 (1983). In *Stiles*, we held insufficient an indictment for unauthorized control

which described neither "the location [n]or the means used by the defendant to gain unauthorized control over [the victim's] property." *Id.* at 683, 465 A.2d at 910.

▆▆▆▆▆ The defendant infers that, to be sufficient, an indictment must describe both the location and the means of an offense. This simply is not the present state of the law.

> "'[A]n indictment must contain sufficient information to advise a defendant of the offense with which he is charged . . . . It must state the elements of the offense with enough specificity to permit the defendant to prepare for trial and to protect him, whether acquitted or convicted, from later being placed in jeopardy for the same offense.'"

*State v. Day*, 129 N.H. 378, 380, 529 A.2d 887, 888 (1987) (quoting *State v. Sands*, 123 N.H. 570, 588, 467 A.2d 202, 213 (1983) (citations omitted)). This court has also "noted many times that '[t]he test is not whether the information could be more comprehensive and certain, but only whether the indictment meets the basic requirements of specificity and fair notice .. . .'" *Day, supra* at 380, 529 A.2d at 888 (quoting *Sands, supra* at 589, 467 A.2d at 213).

The bill of particulars at issue reads in pertinent part:

> "[t]hat on or about the eighteenth of December, 1984, Hilda Akerson [sic] withdrew the sum of Thirty-seven Thousand Eight Hundred and Eighty-two Dollars and Ninety-nine Cents ($37,882.99) from an account in her name at the Strafford National Bank in Dover, New Hampshire, and, in accordance with their prior agreement, turned this sum over to the defendant Warren Stearns, who had agreed to use it for the purchase of 'CDs' at his bank or credit union at Pease Air Force Base. This purchase was to be made on her behalf for the purpose of obtaining a higher rate of interest.
>
> . . .
>
> That on or about the first half of February, 1985, and subsequent thereto, Ms. Arkerson requested that the defendant Warren Stearns return her money, which he did not do and has not done."

The indictment and the bill of particulars in the present case so adequately described the means by which Stearns committed the crime, that it met the sufficiency standard by giving "the defendant enough information about the nature and cause of the accusation

[so as] to allow the defendant to prepare for trial." *Stiles, supra* at 683, 465 A.2d at 910 (citing *State v. Shute,* 122 N.H. 498, 504, 446 A.2d 1162, 1165–66 (1982)).

The defendant's second argument is that the State, by the addition of certain facts contained in the bill of particulars, introduced a different theory of the offense, changing it from theft by unauthorized taking or control to theft by deception. The defendant's argument fails on two grounds: first, the defendant was tried for theft by unauthorized taking, and the jury found him guilty of that crime; and second, RSA 637:1 states that

> "Conduct denominated theft in this chapter constitutes a single offense embracing the separate offenses such as those heretofore known as larceny, larceny by trick, larceny by bailees, embezzlement, false pretense, extortion, blackmail, receiving stolen property. An accusation of theft may *be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the indictment or information.*"

(Emphasis added.) Thus the defendant's argument is without merit.

Finally, on this issue, the defendant alleges that the bill of particulars altered the date of the offense charged in the indictment. The indictment alleges that the offense occurred on February 11, 1985. The bill of particulars did not specify a date on which the offense occurred, but stated that "on or about the first half of February, 1985, and subsequent thereto, Mrs. Arkerson requested that the defendant Warren Stearns return the money, which he did not do and has not done."

A reading of RSA 637:3 shows that it does not require an exact date of the offense to be specified. If the date of an offense is not an essential element of the crime, the State is not necessarily bound to the date specified in the indictment. *State v. Meekins,* 127 N.H. 777, 778, 508 A.2d 1048, 1049 (1986) (citing *State v. Spade,* 118 N.H. 186, 189, 385 A.2d 115, 116 (1978)); *see State v. Boire,* 124 N.H. 622, 474 A.2d 568 (1984). In such cases, a defendant may be convicted upon proof that he committed the offense on a date other than that specified in the indictment. *See Spade, supra* at 189, 385 A.2d at 116. The defendant does not allege that the date of this particular offense was an essential element of the crime charged. Nor could defendant seriously argue that the State was required

to pinpoint the precise date on which he formed his "intent to deprive" the victim of her money.

■■ However, the bill of particulars filed by the State compels the State to prove beyond a reasonable doubt that the offense occurred within the time frame specified in the bill; and, as discussed above, a specific date was not required. *See State v. Boire, supra* at 624, 474 A.2d at 569-70 ("A bill of particulars limits proof to what it specifies, and requires proof of what it specifies."). We hold that the motion to quash was properly denied.

## IV. *Psychiatric Examination*

The fourth issue the defendant raises on appeal is that the trial court committed reversible error in denying the defendant's motion to have the victim undergo a psychiatric examination prior to trial. The defendant devotes two brief paragraphs to this argument.

■■■■ The decision to compel a prosecution witness to undergo a psychiatric examination is within the trial court's discretion. *See State v. Guaraldi,* 124 N.H. 93, 100, 467 A.2d 233, 237 (1983); *State v. St. John,* 120 N.H. 61, 62, 410 A.2d 1126, 1127 (1980). The defendant must produce "'substantial and convincing evidence . . . that impugns the complaining witness' psychological stability and testimonial credibility. . . .'" *Guaraldi, supra* at 100, 467 A.2d at 237 (quoting *State v. Boisvert,* 119 N.H. 174, 178, 400 A.2d 48, 51 (1979)). *See generally State v. Lewis,* 129 N.H. 787, 533 A.2d 358 (1987). The only such evidence we find on the record in this case is that the victim may have given the police different dates on which the unauthorized control took place and had difficulty recalling some events. In light of the nature of the offense, such an inconsistency in recollection, even if true, is hardly substantial evidence compelling a psychological examination of the victim. We hold the trial court acted well within its discretion in denying the defendant's motion. *See generally St. John, supra* at 63, 410 A.2d at 1127.

## V. *Motion to Dismiss*

The defendant raises as a fifth issue the contention that the trial court erred in not granting his motion to dismiss at the end of the State's case. The State contends that "the record does not indicate that [the] Defendant moved for dismissal nor, if he did, the basis of his motion[,] [t]hus fail[ing] to preserve this issue for appeal."

The record before this court contains no reference to defendant's motion to dismiss or the trial court's ruling thereon. The defendant contends that he moved to dismiss at the close of the State's case,

where the record refers to a "Bench conference." Assuming that the defendant did so move at that time, his failure to preserve a record of the basis for his motion and the basis for the trial court's ruling thereon makes it impossible for this court meaningfully to review the trial court's purported ruling.

It is well established that the moving party "has the burden of 'presenting a record sufficient to allow this court to decide the issue presented on appeal.'" *State v. Winders*, 127 N.H. 471, 477, 503 A.2d 798, 802 (1985) (quoting *Brown v. Cathay Island, Inc.*, 125 N.H. 112, 115, 480 A.2d 43, 44 (1984)); SUP. CT. RS. 13, 15. This "'burden includes, when necessary, providing a record of proceedings held in chambers.'" *Winders, supra* at 477, 503 A.2d at 802 (citing *Brown, supra* at 115, 480 A.2d at 44). Accordingly, since the defendant has failed to establish a record of his motion, the grounds therefor, and the basis of the trial court's ruling, we cannot speculate as to the trial judge's decision. *State v. Staples*, 120 N.H. 278, 285, 415 A.2d 320, 324 (1980); *Brown, supra* at 115, 480 A.2d at 45. Thus, we hold that defendant has failed to preserve for appeal the issue of whether the trial court erred in denying his motion to dismiss.

## VI. *Restitution*

The defendant argues as a sixth issue that the trial court erred in ordering Stearns to make restitution from the account in which he put the $37,882.99 he took from the victim. We affirm the trial court.

RSA 651:63 states, in part, that "[a]ny offender may be sentenced to make restitution." In *State v. Fleming*, 125 N.H. 238, 242, 480 A.2d 107, 110 (1984), this court listed three criteria to be met in order to warrant restitution: "(1) restitution will serve to rehabilitate the offender; (2) restitution will compensate the victim; and (3) no other compensation is available." The only criterion the defendant challenges in this case is the third one.

The defendant contends that because, *inter alia*, the victim could recover her money in a civil action, other compensation is, in fact, available. The defendant relies on the following dictum to support his argument:

"A judgment against an unemployed criminal would be of little assistance because collecting such a judgment would be a cumbersome and difficult, if not impossible, task . . . . Accordingly, should a court determine that a criminal defendant is judgment-proof, i.e., that pursuing a civil

> judgment would be impractical, it should also find that, as a practical matter, no other compensation is available to the victim."

*Id.* at 243, 480 A.2d at 111.

The defendant's reliance on this dictum is misplaced. The defendant relies on this passage in drawing the conclusion that, since Stearns is not judgment-proof, restitution is inappropriate. This court's statement in *Fleming* must not be interpreted to imply that a defendant must be judgment-proof in order for a restitution order to be made. The statement relied upon by the defendant was made in the context of the facts of the *Fleming* case, in which the defendant was indigent and the damages unliquidated. To rule as the defendant suggests would be to exempt all defendants who have financial resources from being subject to a restitution order, a result which is inconsistent with common sense and the statute's scheme for restitution.

Our legislature has recognized that there may be a civil action for damages even when restitution has been ordered against a defendant. RSA 651:65 states that "[a]ny restitution ordered and paid shall be deducted from the amount of any judgment awarded in a civil action brought by the victim . . . against the offender based on the same facts . . . ." The legislature has, thus, made it clear that restitution is an appropriate sanction even where other compensation may be available through a civil action for damages.

Accordingly, we hold that a defendant who contests a restitution order has not shown that "other compensation is available" merely by showing that a plaintiff could bring a civil suit for damages and that the defendant is not indigent.

## VII. *Sentencing*

The seventh issue the defendant raises is that the trial court abused its discretion in sentencing him to from three to six years in the State prison, with two years of the minimum suspended on good behavior. The defendant acknowledges that the length of the sentence imposed is within the statutory limits for a class A felony theft. However, he claims that the imposition of the sentence is severe, given the health, age and personal background of the defendant in particular, his previous military and civilian record, his willingness to do community work and his underlying health problems, including a genetic liver ailment and a serious heart ailment. We disagree.

██ ██ As we have previously stated, "[t]rial judges are vested with broad discretionary powers with regard to sentencing." *State v. Rau*, 129 N.H. 126, 129, 523 A.2d 98, 100 (1987); *see also State v. Morehouse*, 120 N.H. 738, 742, 424 A.2d 798, 800 (1980); *see* N.H. CONST. pt. I, art. 18. To violate the New Hampshire Constitution, a sentence must be "grossly disproportionate to the crime." *State v. Wheeler*, 120 N.H. 496, 499, 416 A.2d 1384, 1386 (1980). "Such an abuse of [sentencing] discretion will also occur if the trial court fails to consider all the relevant factors necessary to the exercise of its discretion." *State v. Stone*, 122 N.H. 987, 989, 453 A.2d 1272, 1274 (1982); *State v. Streeter*, 113 N.H. 402, 407, 308 A.2d 535, 538 (1973).

██ We cannot find that the trial court abused its discretion in any way. In fact, the court appears to have given special consideration to the relevant mitigating factors of the defendant's situation in its sentencing order, which reads in pertinent part:

> "It is strongly recommended that incarceration be served at the Strafford County House of Correction in view of the defendant's age, health and lack of prior criminal involvement. Particular attention must be given to the defendant's health needs. . . ."

VIII. *Admission of Evidence*

██ ██ The final argument the defendant makes on appeal is that the trial court abused its discretion in admitting into evidence certain photocopies of checks pursuant to New Hampshire Rule of Evidence 1003. The defendant asserts that the copies were illegible because the dates on the checks were difficult to read, and that their admission was therefore unfairly prejudicial. The State contends that the copies were legible and that, since the defendant failed to establish that their admission was unfair, the trial court properly admitted the evidence. To be brief, this court will defer to the trial court's ruling on the admission of evidence, absent an abuse of discretion. *State v. Judkins*, 128 N.H. 223, 225, 512 A.2d 427, 429 (1986). The trial court, upon considering the matter and inspecting the checks, found them legible and admitted them into evidence. This court has reviewed the exhibits and found them to be quite legible, and we therefore hold that the trial court did not abuse its discretion in allowing their admission.

*Affirmed.*

All concurred.

BATCHELDER and JOHNSON, JJ., participated only on reargument of the restitution issue.